**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JESSICA B.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-1168** |
| **FRANK J. BISIGNANO,** | * | |
| **Commissioner of Social Security,[1]** | | |
| | * | |
| **Defendant.** | | |
| | * | |

**MEMORANDUM OPINION**

On April 8, 2025, Plaintiff Jessica B. petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying her claim for benefits.  ECF No. 1.  This case was referred to a United States Magistrate Judge with the parties' consent.[2] ECF Nos. 2, 4–5; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).  Pending before the Court is Plaintiff's appeal, which is fully briefed.  ECF Nos. 11, 19.[3]  No hearing is necessary. Local Rule 105.6.  This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. § 405(g); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the reasons set forth below, the Commissioner's decision is affirmed.

---

[1]  On April 8, 2025, Plaintiff filed this case against Leland Dudek, who was then the Acting Commissioner of Social Security.  ECF No. 1.  Pursuant to Federal Rule of Civil Procedure 25(d), Frank J. Bisignano was substituted as Defendant after he became the Commissioner.  *See* https://perma.cc/NA2P-W24T (last visited April 3, 2026).

[2]  This case was reassigned to the undersigned on February 27, 2026.

[3]  Plaintiff elected not to file a reply memorandum and the time for doing so has elapsed. Local Rule 105.2(a) (D. Md. Dec. 1, 2025).

## I.    BACKGROUND

### A.    Procedural History

In 2021, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 *et seq.*, alleging a disability onset date of July 1, 2018.[4]  ECF Nos. 8-3 at 18; 8-4 at 2–3, 22–23, 29.[5]  Plaintiff claims that she is disabled within the meaning of the Act because she is unable to work due to "post-traumatic stress disorder, attention deficit disorder, depression, panic attack disorder, anxiety, foot problems, ingrown toenails, asthma, and hypothyroid."  ECF Nos. 8-5 at 2;11 at 1.  The SSA initially denied Plaintiff's application for benefits on April 12, 2023.  ECF Nos. 8-3 at 18; 8-5 at 2.  Plaintiff sought reconsideration, and the SSA affirmed its initial denial on September 11, 2023.  ECF Nos. 8-3 at 18; 8-5 at 6, 8.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on May 6, 2024.  ECF Nos. 8-3 at 18, 39–78; 8-5 at 11–12.  The ALJ rendered a decision on June 12, 2024, in which he found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 8-3 at 18–34.  Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied on February 11, 2025.  *Id.* at 2.  The ALJ's June 12, 2024 decision therefore constitutes the final, reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

### B.    Statutory Framework

The Act authorizes Disability Insurance Benefit payments to every insured individual who "is under a disability."  *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999)

---

[4]  "Title II 'provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need.'"  *Smith* v. *Berryhill*, 587 U.S. 471, 475 (2019) (quoting *Bowen* v. *Galbreath*, 485 U.S. 74, 75 (1988)).

[5]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

(quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024).  The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

Federal regulations require an ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy."  *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps."  *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience."  *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step 3, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5."  *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017).  If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity, which the ALJ then uses at the fourth and fifth steps of the disability assessment.  20 C.F.R. § 404.1520(e); *Monroe* v.

*Colvin*, 826 F.3d 176, 179 (4th Cir. 2016).  Residual functional capacity is defined as "the most [the claimant] can still do despite [the claimant's physical and mental] limitations."  20 C.F.R. § 404.1545.  The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess [their] work-related abilities on a function-by-function basis."  *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,474-34,475 (July 2, 1996)).  "Only after such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms of the exertional levels of work.'"  *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636).  The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment.  20 C.F.R. § 404.1520(e); *Monroe*, 826 F.3d at 179.

### C.    The ALJ's Decision

The ALJ initially determined that Plaintiff meets the Act's "insured status requirements . . . through March 31, 2025."  ECF No. 8-3 at 20 (bold removed).  At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.  *Id.* at 21.  At step two, the ALJ found that although Plaintiff had the medically determinable impairments of "bilateral plantar fasciitis, asthma, hypothyroidism, obesity, anxiety disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, adjustment disorder, and major depressive disorder," none of these constituted "a severe impairment or combination of impairments."  *Id.* (bold removed).  In reaching this conclusion, the ALJ evaluated the "paragraph B" criteria as they applied to Plaintiff's mental impairments.[6]  *Id.* at 23–24.  He also evaluated medical opinion evidence

---

[6]  Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments.  Within Appendix 1, "Adult Listings 12.00 *et seq.* . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,'

asserting that Plaintiff has "no severe impairments," including "no restrictions in her ability to do work-related activities including sitting, standing, walking, carrying, lifting, hearing, and speaking" and "no functional limitations" regarding Plaintiff's nonphysical work activities. *Id.* at 25.

Before moving to step three, the ALJ explained that "[o]rdinarily, the analysis would stop at this point. However, the undersigned continues the analysis as an alternate finding that assumes, arguendo, the claimant's medically determinable impairments in this finding were severe." *Id.* At step three, under this alternate analysis, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* (citations omitted, bold removed); *see also* footnote 6, *supra*.

Before continuing to the fourth step of the sequential evaluation, the ALJ determined:

> As an alternate analysis, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to frequent climbing of ramps and stairs, frequent balancing, stooping, kneeling, crouching, and crawling, and occasional climbing ladders, ropes, or scaffolds.
>
> She can only occasionally be exposed to moving mechanical parts and unprotected heights, poor ventilation, concentrated odors, fumes, dusts, and gases, or extreme cold and extreme heat.
>
> She is limited to simple routine tasks. She can only occasionally adjust to changes in workplace settings.

---

which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020).

The four "paragraph B" functional areas are: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace"; and (4) "adapting, or managing oneself." *Anthony M.* v. *Commissioner*, Civil Action No. SAG-19-651, 2020 WL 434581, at *2 (D. Md. Jan. 28, 2020) (citing 20 C.F.R. § 404.1520a).

*Id*. at 27 (bold removed, line breaks added).  At the fourth step, the ALJ determined that Plaintiff

"has no past relevant work."  *Id*. at 32 (bold removed).  Lastly, at the fifth step, the ALJ

determined that considering Plaintiff's "age, education, work experience, and residual functional

capacity, there are jobs that exist in significant numbers in the national economy that [she] can

perform."  *Id*. at 37 (citations omitted, bold removed).  Accordingly, the ALJ determined that

even if Plaintiff's impairments were severe, she "has not been under a disability, as defined in

the Social Security Act."  *Id*. at 34 (bold removed).

## II.    DISCUSSION

On appeal, Plaintiff argues that the ALJ erred in his step-two finding that Plaintiff does

not have a severe impairment.[7]  ECF No. 11 at 3–8.  Following a discussion of the applicable

standard of review, Plaintiff's severity argument is addressed below.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed."

*Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)).  The Court

must affirm the decision "so long as the agency applied correct legal standards and the factual

findings are supported by substantial evidence."  *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman*

---

[7] Plaintiff also argues that the ALJ erroneously evaluated her residual functional capacity and subjective statements.  ECF No. 11 at 8–25.  Where, as here, the ALJ finds that the claimant is not disabled at any given step, the five-step evaluation ends.  20 C.F.R. § 404.1520(a)(4) ("If we can find that you are . . . not disabled at a step, we make our determination . . . and we do not go on to the next step."); *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) ("If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps.") (citation omitted); *James K.* v. *Bisignano*, Civil Action No. DRM-25-245, 2026 WL 662976, at *4 (D. Md. Mar. 9, 2026) ("If the ALJ finds no severe impairments [at step two], the claimant is not disabled, and the analysis does not proceed to the other steps.").  Nevertheless, as an alternative basis for his decision, the ALJ engaged in the remaining steps of the sequential disability analysis.  Review of the ALJ's decision and supporting record reveals that the ALJ's residual functional capacity analysis and evaluation of Plaintiff's subjective statements, while unnecessary to his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, are supported by substantial evidence.  A discussion of the ALJ's subjective statement analysis as it pertains to his step-two determination is discussed in Section II.B., *infra*.

v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019). Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion."). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642. The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015). Rather, an administrative decision's reasoning need only be "reasonably discernible." *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021). "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

**B.**     **Severity Determination**

At step two of the five-step sequential evaluation, the claimant "bears the burden of production and proof to show that [they] suffer[ ] from a severe medically determinable impairment." *Bowers* v. *Colvin*, 628 Fed. Appx. 169, 171 (4th Cir. 2015); *see also James K.* v. *Bisignano*, Civil Action No. DRM-25-245, 2026 WL 662976, at *4 (D. Md. Mar. 9, 2026); 20 C.F.R. § 404.1520(a)(4)(ii), (c).  To meet this burden, the claimant must establish that they have an "impairment or combination of impairments . . . that affects [their] ability to perform basic work-related activities."  Social Security Ruling 16-3p (SSR 16-3p), 82 Fed. Reg. 49,462-03, 49,467 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1522(a).  Examples of such activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and nonphysical functions such as seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1522(b).

"When evaluating the severity of a claimant's mental impairments, the ALJ must employ the 'special technique' to rate [the claimant's] degree of limitation in the four broad functional areas known as the paragraph B criteria." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020); *see also* footnote 6, *supra*.  An ALJ must follow the special-technique regulation "[w]hen evaluating and documenting the severity of a claimant's mental impairment at steps 2 and 3—and its concomitant impact on the [residual functional capacity] assessment relevant to step 4." *Patterson*, 846 F.3d at 659.  The severity determination is distinct from the assessment of residual functional capacity, which occurs after step three. *See, e.g.*, *Anthony M.* v. *Commissioner*, Civil Action No. SAG-19-651, 2020 WL 434581, at *3 (D. Md. Jan. 28, 2020) (explaining that "the limitations identified in the 'paragraph

B' criteria are not [a residual functional capacity] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process") (internal quotations and citations omitted).

Furthermore, "in determining whether an individual's impairments are of sufficient severity to prohibit basic work[-]related activities, the ALJ must consider the combined effect of all physical impairments, as well as the combined effect of all physical and mental impairments." *Reichenbach* v. *Heckler*, 808 F.2d 309, 312 (4th Cir. 1985) (citations omitted); *see also* 42 U.S.C. § 423(d)(2)(B) ("[T]he Commissioner . . . shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."); 20 C.F.R. § 1404.1520(c) ("If you do not have any impairment *or combination of impairments* which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.") (emphasis added).  The combined effect of impairments is properly considered when the ALJ adequately addresses both the component impairments and the claimant's overall functioning.  *Baker* v. *Astrue*, Civil Action No. SAG-10-1045, 2012 WL 12751, at *5 (D. Md. Jan. 3, 2012) (affirming where the ALJ considered each impairment and the combination of impairments and concluded that they were not "sufficiently severe to preclude her from performing substantial gainful activity"); *see also Robin R.* v. *Commissioner of Soc. Sec. Admin.*, No. 4:24-CV-00026, 2025 WL 2702046, at *9-10 (W.D. Va. Sept. 23, 2025) (affirming where the ALJ "discussed the evidence pertaining to each [paragraph B] functional area," explained her conclusion that the plaintiff's "mental impairments cause[d] no more than mild limitation in any of the functional areas," and corroborated her findings with medical opinions concluding there was no "more than a minimal limitation in the claimant's ability to do basic work activities").

9

As part of the step-two severity determination, the SSA "consider[s] an individual's symptoms and functional limitations to determine whether [their] impairment(s) is severe unless the objective medical evidence alone establishes a severe medically determinable impairment or combination of impairments." SSR 16-3p, 82 Fed. Reg. at 49,467. The applicable federal regulation includes subjective statements in the definition of "symptoms." 20 C.F.R. § 404.1502(i) ("Symptoms means your own description of your physical or mental impairment."); *see also* SSR 16-3p, 82 Fed. Reg. at 49,463 ("We define a symptom as the individual's own description or statement of [their] physical or mental impairment(s).").

When evaluating a claimant's subjective symptoms, an ALJ is required to use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 82 Fed. Reg. 49,462-03. *Arakas* v. *Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). Under this framework, the ALJ must first "determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id*. (quoting 20 C.F.R. § 404.1529(b)); *see also* SSR 16-3p, 82 Fed. Reg. at 49,464 ("[I]f there is a medically determinable impairment, but the impairment(s) could not reasonably be expected to produce the individual's symptoms, we will not find those symptoms affect the ability to perform work-related activities.").

After a claimant satisfies the first step, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 82 Fed. Reg. at 49,463; *see also* 20 C.F.R. § 404.1529(c); *Arakas*, 983 F.3d at 95. This requires the ALJ to examine the entire record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case

record.  20 C.F.R. § 404.1529(c); SSR 16-3p, 82 Fed. Reg. at 49,464-49,466.  The ALJ may also consider factors such as daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; and treatment, other than medication, received for relief of pain or other symptoms.  20 C.F.R. § 404.1529(c); SSR 16-3p, 82 Fed. Reg. at 49,465-49,466.

A claimant is "entitled to rely exclusively on subjective evidence" to prove the severity and extent of their symptoms.  *Arakas*, 983 F.3d at 96 (quoting *Hines* v. *Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006)).  Thus, an ALJ commits "reversible error by improperly increasing Plaintiff's burden of proof by 'effectively requiring' [their] subjective symptoms to be 'supported by objective evidence.'" *Christina W.* v. *O'Malley*, Civil Action No. CDA-23-1325, 2024 WL 3819343, at *4 (D. Md. Aug. 14, 2024) (quoting *Arakas*, 983 F.3d at 96); *see also Stoker* v. *Saul*, 833 Fed. Appx. 383, 386 (4th Cir. 2020) (finding that "the ALJ's determination that [the claimant's] assertions about the severity and limiting effects of his pain were less credible merely because no objective medical evidence supported them, was improper.").  A claimant fails to satisfy the requirements of step two "when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." *James K.*, 2026 WL 662976, at *4 (citing Social Security Ruling 85-28 (SSR 85-28), 1985 WL 56856, at *3 (Jan. 1, 1985)); *Crystal S.* v. *Kijakazi*, Civil Action No. MJM-20-3717, 2022 WL 4539717, at *3 (D. Md. Sep. 28, 2022) (same).

Here, Plaintiff asserts that the ALJ erroneously determined that her impairments were not severe because he "failed to explain how these findings and observations would not cause more than a minimal limitation in the Plaintiff's ability to perform basic work activities."  ECF No. 11 at 6.  As part of this assertion, Plaintiff alleges that the ALJ "erroneously evaluated the plaintiff's

11

subjective complaints" for two reasons. *Id.* at 18. First, he did not evaluate Licensed Certified Social Worker-Clinical (LCSW-C) Jennavieve Kolb's medical opinion, which "satisfie[d] the Plaintiff's threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the subjective symptoms claimed." *Id.* at 19. Second, the ALJ "erroneously required the Plaintiff to prove the type and degree of her subjective complaints by objective medical evidence." *Id.* at 22. In response, the Commissioner argues that the ALJ's severity determination was "consistent with the regulatory framework" and "supported by substantial evidence." ECF No. 19 at 6–7.

First, the ALJ properly assessed Plaintiff's physical and mental impairments. In his step-two analysis, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities." ECF No. 8-3 at 21. As part of this analysis, the ALJ concluded that "[t]he evidence of record does not support severe impairments with persistent functional limitations." *Id.* at 23. More specifically, the ALJ found that:

> Records reflect limited and conservative treatment of physical impairments with no persistent clinical signs, no physical therapy, no injections, no surgical procedures, and no ongoing treatment by pain management.
>
> Records indicate symptoms of hypothyroidism were well controlled with Levothyroxine.
>
> The claimant used an albuterol inhaler with no persistent observed respiratory symptoms, exacerbations, or hospitalizations.
>
> Records do not reflect regular complaints of foot pain after she received a refurbished orthotic in February of 2020, and do not indicate a gait deficit.
>
> Examinations reflect only occasional mild foot tenderness, intermittent deficits in mood or affect, a normal gait, intact memory, and good concentration, failing to establish severe impairments.

*Id.* (internal record citations omitted, line breaks added).  The ALJ further explained that the opinion of Deepa Balasubramaniam, MD, which he found persuasive, established that Plaintiff "has no restrictions in her ability to do work-related activities including sitting, standing, walking, carrying, lifting, hearing, and speaking."  *Id.* at 25.  When evaluating Plaintiff's mental impairments, the ALJ followed the special technique required by 20 C.F.R. § 404.1520a, analyzing each of the four paragraph B criteria before determining that because Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [her] ability to do basic work activities, they are nonsevere."  *Id.* at 24.

Second, the ALJ considered the combined effect of Plaintiff's impairments.  As in *Baker*, 2012 WL 12751, at \*5, the ALJ here considered each of the Plaintiff's physical and mental impairments (ECF No. 8-3 at 21–24), explicitly stated his cumulative consideration of these impairments "singly or together" (*id.* at 22), and found no evidence supporting "severe impairments with persistent functional limitations" (*id.* at 23).  Similarly, the ALJ's analysis of the combined effects of Plaintiff's mental impairments was adequate because, like the ALJ in *Robin R.*, 2025 WL 2702046, at \* 9-10, he discussed the evidence regarding each functional area, explained his conclusion that Plaintiff's "mental impairments cause no more than mild limitation in any of the functional areas," and corroborated his findings with medical opinions concluding that there was no "more than a minimal limitation in the claimant's ability to do basic work activities."  ECF No. 8-3 at 24–25.

Next, the ALJ adequately evaluated Plaintiff's subjective statements.[8]  Contrary to Plaintiff's assertion, the ALJ did evaluate LCSW-C Kolb's medical opinion in both his step-two

---

[8]  Because the Court must consider the decision of an Administrative Law Judge (ALJ) in its entirety, findings in the ALJ's alternate analysis may be considered as support for his step two determination.  *Christopher M.* v. *Bisignano*, Civil Action No. 24-02922-DRM, 2026 WL

analysis and his "alternate" RFC analysis.[9]  *Id.* at 23, 30–32.  The ALJ cited dozens of pages

from the opinion to support his conclusion that it was "unpersuasive, as it does not provide a

functional assessment of the extent of the impact of the claimant's impairments on her ability to

work," it "fail[ed] to support significant functional limitations," and was "generally inconsistent

with" other medical evidence.  *Id.* at 23, 32.  Because the ALJ did not find that LCSW-C Kolb's

opinion supported a conclusion that Plaintiff was disabled, he committed no reversible error in

finding that Plaintiff did not satisfy the threshold requirement of the two-step subjective-

symptom analysis.  20 C.F.R. § 404.1529(a).  In other words, because the ALJ found there were

no medically determinable impairments that could reasonably be expected to produce Plaintiff's

symptoms, he was not required to consider the intensity, persistence, and limiting effects of those

symptoms.

Finally, there is no reversible error in the ALJ's finding that Plaintiff failed to prove that

her impairments caused more than a minimal effect on her ability to do work-related activities.

In *Evans* v. *Heckler*, the United States Court of Appeals for the Fourth Circuit reversed a finding

that the plaintiff's impairments were not severe because the conclusion was not supported

"anywhere in the record" and "the uncontroverted medical evidence le[d] directly to the opposite

conclusion."  734 F.2d 1012, 1015 (4th Cir. 1984).  In contrast, here the ALJ cited three medical

opinions, one stating that Plaintiff had "no severe impairments," another finding "no restrictions

in [Plaintiff's] ability to do work-related activities," and a third finding "no functional

---

352985, at *5 (D. Md. Feb. 9, 2026) ("When evaluating an ALJ's decision for substantial evidence, the reviewing court reads the ALJ's decision 'as a whole.'") (quoting *Keene* v. *Berryhill*, 732 Fed. Appx. 174, 177 (4th Cir. 2018)); *see also Smith* v. *Astrue*, 457 Fed. Appx. 326, 328 (4th Cir. 2011) (finding that a step three analysis was supported by substantial evidence considered "at subsequent steps of the evaluation").

[9]  The ALJ does not name Licensed Certified Social Worker-Clinical (LCSW-C) Jennavieve Kolb in his step two analysis.  Instead, he refers to "[m]ental status exams from Village Counseling," which were conducted by LCSW-C Kolb.  ECF No. 8-3 at 23.

limitations." ECF No. 8-3 at 25. Because the ALJ found that the medical evidence identified no work-related restrictions, his finding that Plaintiff had failed to establish more than a minimal effect on her ability to do work-related activities is a proper basis for concluding that her impairments were not severe. *E.g.*, *James K.*, 2026 WL 662976, at *4 (citing SSR 85-28, 1985 WL 56856, at *3).

An ALJ should only "apply[ ] the not severe impairment concept" after taking "[g]reat care . . . to determine clearly" how a claimant's impairments affect her ability to work. SSR 85-28, 1985 WL 56856, at *4. Here, the ALJ considered all nine of Plaintiff's medically determinable impairments, both "singly [and] together." ECF No. 8-3 at 21–25. He appropriately applied the special technique in evaluating Plaintiff's mental impairments. *Id.* at 23–24. He used the two-step framework for evaluating Plaintiff's subjective symptoms, citing relevant medical opinions to support his finding that Plaintiff did not satisfy the framework's threshold requirement. *Id.* at 21–25, 29–32. Furthermore, the ALJ considered Plaintiff's treatments and daily activities. *Id.* at 21–25, 27–32. The ALJ even took care to conduct an "alternate analysis," completing the five-step sequential evaluation even though he was not required to continue after his step two finding. *Id.* at 25–33; *Pass*, 65 F.3d at 1203; *James K.*, 2026 WL 662976, at *4. The ALJ therefore applied correct legal standards and supported his findings with substantial evidence. *Britt*, 860 Fed. Appx. at 259; *Mascio*, 780 F.3d at 634. Accordingly, the Court must affirm his decision.

## III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. A separate Order follows.

Date:  April 3, 2026

/s/
_____
Erin Aslan
United States Magistrate Judge
